UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| KEVIN HENDERSON, individually and on behalf of all others similarly situated,<br><br>v.<br><br>JOHNSON CONTROLS, INC. | Case No. 2:22-cv-00414<br>FLSA Collective Action |

### PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1. Like many other companies across the United States, Johnson Controls' timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Johnson Controls' organization.

3. As a result, Johnson Controls' workers who were not exempt from overtime under federal law were not paid for all overtime hours worked or were not paid their proper overtime premium after the onset of the Kronos hack.

4. Kevin Henderson is one such Johnson Controls worker.

5. Johnson Controls could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Johnson Controls did not pay its non-exempt hourly and salaried employees their full overtime premium for all overtime hours worked, as required by federal law.

7. Johnson Controls pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. Johnson Controls made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely paymet of their wages to make ends meet.

9. Johnson Controls' failure to pay overtime wages for all overtime hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*

10. Henderson brings this lawsuit to recover these unpaid overtime wages and other damages owed by Johnson Controls to him and Johnson Controls' other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Johnson Controls' decision to make its own non-exempt employees workers bear the economic burden for the hack.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Johnson Controls is headquartered in this District.

## PARTIES

13. **Plaintiff Kevin Henderson** is a natural person.

14. Henderson was, at all relevant times, an employee of Johnson Controls.

15. Henderson has worked for Johnson Controls since June 2014.

16. Henderson's written consent is attached as Exhibit 1.

17. Henderson represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former hourly and salaried employees of Johnson Controls who were non-exempt under the FLSA and who worked for Johnson Controls in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

18. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

19. **Defendant Johnson Controls, Inc. ("Johnson Controls")** is a domestic corporation.

20. Johnson Controls maintains its headquarters and principal place of business in this District.

21. Johnson Controls may be served by service upon its registered agent, **CT Corporation System, 301 S. Bedford St., Ste. 1, Madison, WI 53703**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

22. At all relevant times, Johnson Controls was an employer of Henderson within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. At all relevant times, Johnson Controls was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. Johnson Controls was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25. During at least the last three years, Johnson Controls has had gross annual sales in excess of $500,000.

26. Johnson Controls was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

27. Johnson Controls employs many workers, including Henderson, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

28. The goods and materials handled, sold, or otherwise worked on by Henderson, and other Johnson Controls employees and that have been moved in interstate commerce include, but are not limited to, medical supplies and equipment.

## FACTS

29. Johnson Controls provides fire, HVAC, security equipment, and other facility management products and services for buildings.

30. Johnson Controls employs more than 100,000 workers. Johnson Controls, Corporate Fact Sheet, available at https://www.johnsoncontrols.com/-/media/jci/corp/media/media-materials/files/jci_corporate_fact_sheet_infographic_12_4_19.pdf (last visited Apr. 3, 2022).

31. Many of Johnson Controls' employees are non-exempt hourly and salaried workers.

32. Since at least 2021, Johnson Controls has used timekeeping software and hardware operated and maintained by Kronos.

33. On or about December 11, 2021, Kronos was hacked with ransomware.

34. The Kronos hack interfered with the ability of its customers, including Johnson Controls, to use Kronos's software and hardware to track hours and pay employees.

35. Since the onset of the Kronos hack, Johnson Controls has not kept accurate track of the hours that Henderson and Similarly Situated Workers have worked.

36. Instead, Johnson Controls has used various methods to estimate the number of hours Henderson and Similarly Situated Workers have worked in each pay period.

37. For example, Johnson Controls issued paychecks based on their scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

38. This means that employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

39. Even if certain overtime hours were paid, the pay rate would be less than the full overtime premium.

40. This is what happened to Henderson.

41. Instead of paying Henderson for the hours she actually worked (including overtime hours), Johnson Controls simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Henderson's actual hours worked and regular pay rates.

42. In some instances, Henderson was paid portions of the overtime she worked, but the overtime rate she was paid was not at least 1.5 times his regular rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

43. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

44. Johnson Controls knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

45. Johnson Controls knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

46. Johnson Controls could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

47. Instead of accurately tracking hours and paying employees their overtime, Johnson Controls decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

48. Even if it did pay any overtime to affected employees, Johnson Controls did not take into account shift differentials and non-discretionary bonuses, such that the overtime premium Johnson Controls did pay, if any, was not the full overtime premium owed under the law based on the employees' regular rate.

49. It was feasible for Johnson Controls to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

50. But it didn't do that.

51. In other words, Johnson Controls pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

52. Henderson is just one of the many front-line employees who had to shoulder the burden of this decision by Johnson Controls.

53. Henderson was a non-exempt hourly employee of Johnson Controls.

54. Henderson regularly worked over 40 hours per week for Johnson Controls.

55. Henderson's normal, pre-Kronos hack hours are reflected in Johnson Controls' records.

56. Since the Kronos hack, Johnson Controls has not paid Henderson for his actual hours worked each week.

57. Since the hack took place, Johnson Controls has not been accurately recording the hours worked by Henderson and its other workers.

58. Even when Johnson Controls has issued payment to Henderson for any overtime, the overtime is not calculated based on Henderson's regular rates, as required by federal law.

59. Johnson Controls was aware of the overtime requirements of the FLSA.

60. Johnson Controls nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Henderson.

61. Johnson Controls' failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

62. The full overtime wages owed to Henderson and the Similarly Situated Workers became "unpaid" when the work for Johnson Controls was done—that is, on Henderson and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

63. At the time Johnson Controls failed to pay Henderson and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Johnson Controls became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under federal and California law.

64. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

65. Even if Johnson Controls made any untimely payment of unpaid wages due and owing to Henderson or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

66. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

67. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Johnson Controls' acts and omissions resulting in the unpaid wages in the first place.

68. Henderson and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Johnson Controls under federal law.

### COLLECTIVE ACTION ALLEGATIONS

69. Henderson incorporates all other allegations.

70. Numerous individuals were victimized by Johnson Controls' patterns, practices, and policies, which are in willful violation of the FLSA.

71. Based on his experiences and tenure with Johnson Controls, Henderson is aware that Johnson Controls' illegal practices were imposed on the FLSA Collective.

72. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

73. These employees are victims of Johnson Controls' respective unlawful compensation practices and are similarly situated to Henderson in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

74. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

75. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

76. Johnson Controls' failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

77. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA

78. Henderson incorporates each other allegation.

79. By failing to pay Henderson and the FLSA Collective members overtime at 1.5x their regular rates, Johnson Controls violated the FLSA. 29 U.S.C. § 207(a).

80. Johnson Controls owes Henderson and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

81. Johnson Controls owes Henderson and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

82. Johnson Controls knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

83. Because Johnson Controls knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Johnson Controls owes these wages for at least the past three years.

84. Johnson Controls' failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

85. Because Johnson Controls' decision not to pay overtime was not made in good faith, Johnson Controls also owes Henderson and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

86. Accordingly, Henderson and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### RELIEF SOUGHT

Henderson prays for judgment against Johnson Controls as follows:

- a. For an order certifying a collective action for the FLSA claims;
- b. For an order finding Johnson Controls liable for violations of federal wage laws with respect to Henderson and all FLSA Collective members covered by this case;
- c. For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Henderson and all FLSA Collective members covered by this case;
- d. For an equitable accounting and restitution of wages due to Henderson and all FLSA Collective members members covered by this case;

e. For a judgment awarding costs of this action to Henderson all FLSA Collective members covered by this case;

f. For a judgment awarding attorneys' fees to Henderson and all FLSA Collective members covered by this case;

g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Henderson and all FLSA Collective members covered by this case; and

h. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
_____
**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**